IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **WILLIAM E. DUGAN, et al.,**　　Plaintiffs,　v.　**ROCKFORD BLACKTOP CONSTRUCTION CO., an Illinois Corporation, f/k/a ROCKFORD BLACKTOP, INC., a Nevada corporation,**　　Defendant. | Case No.: 08-CV-2651　Judge: ST. EVE |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER CASE TO THE WESTERN DIVISION

NOW COMES Defendant, ROCKFORD BLACKTOP CONSTRUCTION, CO., incorrectly identified as "ROCKFORD BLACKTOP CONSTRUCTION, CO., an Illinois Corporation, f/k/a ROCKFORD BLACKTOP, INC., a Nevada corporation"[1], by and through its attorneys, HINSHAW & CULBERTSON LLP and pursuant to 28 U.S.C. §1404(a) and (b), hereby moves to transfer this action to the United States District Court for the Northern District of Illinois, Western Division, and states as follows:

### INTRODUCTION

The Defendant, ROCKFORD BLACKTOP CONSTRUCTION, CO. is located in Loves Park, IL and provides construction, engineering and contracting services to the surrounding region. Defendant's business is conducted almost exclusively within the boundaries of the United States District Court for the Northern District of Illinois, Western Division. Plaintiffs

---

[1] Rockford Blacktop Construction, Co. was never formerly known as Rockford Blacktop, Inc. Rockford Blacktop, Inc. was a separate and distinct corporate entity from Rockford Blacktop Construction, Co. that was organized to conduct business in the State of Nevada. In fact, Rockford Blacktop, Inc. never conducted business or otherwise operated in the State of Illinois. Rockford Blacktop, Inc. did not contract with Local 150 of the International Union of Operating Engineers, AFL-CIO, or have any obligations to or dealings with any funds administered by the Midwest Operating Engineers. Rockford Blacktop, Inc. ceased to exist in January 2001 when it merged with Rockford Blacktop Construction, Co.

70563285v1 867139

initiated contact with the Defendant in the Western Division to enter into a collective bargaining relationship with the Defendant. The parties ultimately agreed, pursuant to a Collective Bargaining Agreement (CBA) between the Defendant and Local 150 of the International Union of Operating Engineers, AFL-CIO ("Local 150"), that the Defendant would make fringe benefit contributions to Plaintiffs on behalf of certain employees. Defendant's dealings with Local 150, including those related to fringe benefit contributions, have taken place in the Western Division.[2] The requirements surrounding the fringe benefit contributions gave rise to the instant lawsuit.

Plaintiffs brought this action in their capacity as Trustees of the MIDWEST OPERATING ENGINEERS WELFARE FUND, MIDWEST OPERATING ENGINEERS PENSION TRUST FUND, OPERATING ENGINEERS LOCAL 150 APPRENTICESHIP FUND and LOCAL 150 I.U.O.E VACATION SAVINGS PLAN. Plaintiffs allege that the Defendant has breached its obligations to "make fringe benefit contributions to Plaintiffs under the Agreements and Declarations of Trust." (Amended Complaint, ¶¶ 4 and 5). Specifically, Plaintiffs allege the Defendant has breached its obligations under the Plans in the following respects:

> (a) has failed and refused to provide Plaintiffs' auditors with all required payroll records in order to perform a full and complete audit for the purpose of verifying the accuracy of its past reports and to determine what additional contributions, if any, may be due the Plaintiff funds. Specifically, the following documents are required to complete an audit: certified payrolls; 1099's; and general ledgers.
>
> (b) Defendant has failed to make payment of audit fees based upon an incomplete audit of the Defendant's payroll records.

(Amended Complaint, ¶ 5). Plaintiffs claimed that a total of $4,174.49 in audit fees is owed to Plaintiffs. (Amended Complaint, ¶¶ 5 and 6). However, Defendant has no obligation to pay the

---

[2] Local 150 has an office located at 4477 Linden Road, Rockford, IL 61109.

audit fees inasmuch as Defendant is not delinquent in making fringe benefit contributions. In other words, the issue in dispute is whether the Defendant "refused to provide Plaintiffs' auditors with required payroll records" during an audit conducted at Defendant's office.

All material events to the underlying cause of action occurred in the Western Division. The agreement at issue was executed in the Western Division and covers employees who are employed in the Western Division. The alleged breach of the agreement occurred in the Western Division. Specifically, the Defendant's alleged failure to provide payroll records occurred during an audit conducted at the Defendant's office and involved payroll records, which are maintained in the Western Division. Therefore, transfer to the Western Division is proper inasmuch as all material events occurred in the Western Division.

## **LEGAL STANDARD**

A district court "may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C § 1404(a). The standard to transfer venue between divisions is subject to the same analysis as any other transfer pursuant to § 1404(a). *Concrete Structures of Midwest, Inc. v. Treco Const. Services, Inc.*, 1996 WL 67213 at *3 (N.D.Ill. February 16, 1996). A Section 1404 transfer is proper where (1) venue is proper in the transferor division, (2) venue would be proper in the transferee division, and (3) the transfer will serve the convenience of the parties and witnesses, and the interest of justice. *Bryant v. ITT Corp.*, 48 F.Supp.2d 829, 832 (N.D.Ill. 1999). These statutory factors must be considered in light of the circumstances of the case. *Graham v. United Parcel Service*, 519 F.Supp.2d 801, 809 (N.D.Ill. 2007), citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

Once the court has determined that venue is proper in the transferor and transferee division, it must then weigh the private interests of the parties and the public interest of the court in evaluating the convenience and fairness of transfer. *Heller Financial, Inc.*, 713 F.Supp. 1125,

1127 (N.D.Ill. 1989). The private interests include "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) availability of evidence in each forum; and (4) convenience of the parties and witnesses." *Sanders v. Franklin*, 25 F.Supp.2d 855, 857 (N.D.Ill. 1998). The relevant public factors are "the court's familiarity with the applicable law and concerns relating to the efficient administration of justice." *Graham*, 519 F.Supp.2d at 808.

To prevail on a motion to transfer, the moving party must demonstrate that the transferee division is more convenient than the current division. *Heller Financial, Inc.*, 713 F.Supp. 1125, 1127 (N.D.Ill. 1989). "Though § 1404(a) is derived from the common law doctrine of *forum non conveniens*, the moving party under § 1404(a) has a lesser burden of showing inconvenience than is required under the common law doctrine." *Id*. (citations omitted). Section 1404(a) does not specify the weight to be accorded each factor, so the decision to transfer is committed to the sound discretion of the trial judge. *Coffey*, 796 F.2d at 219.

## **ARGUMENT**

The Northern District does not have a divisional venue requirement. *Graham*, 519 F.Supp.2d at 809. Accordingly, this case could have originally been filed in either division inasmuch as venue is proper in the Northern District of Illinois. *Id*. Since venue is proper in the transferee and transferor division, the transfer determination rests on whether the public and private factors weigh in favor of transferring the case.

In this case, the relevant public and private factors weigh in favor of transferring venue from the Eastern Division to the Western Division of the Northern District of Illinois. Most importantly, the material events in this case occurred in the Western Division. In fact, the Eastern Division has absolutely no connection to the material events that underlie the instant dispute. In addition, the Defendant's principal place of business is in the Western Division and all relevant evidence is located in the Western Division. Furthermore, the Defendant's

4

employees responsible for overseeing the audit and agreement at issue are key witnesses in this case, and all such employees reside in the Western Division. Therefore, transfer to the Western District is warranted inasmuch as the Western District is a more convenient venue.

### A.   Plaintiffs' Choice of Forum Should Be Given Little, if any, Deference Inasmuch as the Chosen Forum is not the Situs of Material Events.

While a "plaintiff's choice of forum" is a factor in considering whether a motion to transfer should be granted, it is not absolute and will not defeat a well-founded motion to transfer. *Applied Web Sys., Inc. v. Catalytic Combustion Corp.*, 1991 WL 70893, at *3 (N.D.Ill. April 29, 1991). Moreover, the plaintiffs' choice of forum in this case is to be given little, if any deference because the chosen forum lacks any significant connection to the cause of action. *Hanley v. Omarc, Inc.*, 6 F.Supp.2d 770, 775 (N.D.Ill. 1998) (explaining that the plaintiff's choice of forum in an ERISA action is entitled to less deference when the chosen forum lacks significant contact with the underlying cause of action); *Sanders*, 25 F.Supp.2d at 858, citing *Heller Financial, Inc.*, 713 F.Supp. at 1129.

In *Hanley*, the defendant corporation had its principal place of business in the transferee district. *Hanley*, 6 F.Supp.2d at 772. The defendant entered into collective bargaining agreements in the transferee district that included an obligation for the defendant to make contributions on behalf of certain employees to the Union Welfare and Pension Funds ("Funds"). *Id*. The Funds were administered in the transferor district. *Id*. The Funds brought suit under ERISA alleging that the defendant breached the parties' agreements by failing to make the required monthly contributions and by failing to submit accurate reports. *Id*. at 773. The defendant moved to transfer venue. *Id*.

The Court acknowledged that deference is usually given to the plaintiff's choice of forum, but determined that such deference was not proper because the chosen forum had no

5

connection to the cause of action. *Id*. at 775. The alleged breach and all other material events relevant to the underlying cause of action took place in the transferee district. *Id*. The only relevant contact the transferor district had was that it was the location where the Funds were administered. *Id*. Therefore, the Court concluded that the plaintiff's chosen forum should be given limited deference.

Likewise, the Plaintiffs in this case filed suit in the Northern District of Illinois, Eastern Division, when all material events occurred in the Northern District of Illinois, Western Division. The Defendant's principal place of business is in the Western Division. The obligation for the Defendant to make fringe benefit contributions stems from its collective bargaining agreement with Local 150, which was entered into and executed in the Western Division. Moreover, the crux of the instant dispute (i.e. the Defendant's alleged breach of the agreement) occurred in the Western Division. The audit took place at the Defendant's office located in the Western Division and involved a review of personnel records, which are maintained in the Western Division. Furthermore, the agreement at issue covers employees who are employed in the Western Division. The only relevant contact this matter has with the Eastern Division is that the Plaintiffs' funds are administered in the Eastern Division. Accordingly, Plaintiffs' chosen forum in this case is to be given little, if any, deference.

      **B.    The Western Division is the Situs of Material Events.**

The situs of material events is provided more weight than the plaintiff's chosen forum when the plaintiff's chosen forum lacks significant contacts with the underlying cause of action. *Heller Financial Inc.*, 713 F.Supp. at 1129. Such is the case here. As discussed, the Western Division is the situs of all material events relevant to the Plaintiffs' allegations. The alleged breach, the execution of the collective bargaining agreement, the audit, the payroll records and other documents, and the employees covered by the agreement are all within the Western

70563285v1 867139

Division.  None of the events underlying the instant lawsuit occurred in the Eastern Division.  Therefore, this factor favors transfer to the Western Division and should be given more weight than Plaintiffs' chosen forum.

### C.     The Relevant Evidence is Located in the Western Division.

The relative ease of access to sources of proof is determined by the location of the relevant material evidence.  *Avco Corp. v. Progressive Steel Treating, Inc.*, 2005 WL 2483379 at *3 (N.D.Ill. October 6, 2005).  The Court in *Avco Corp.* determined that transfer from the Northern District of Illinois, Eastern Division to the Northern District of Illinois, Western Division was supported by the fact that the defendant's evidence was located in the Western Division. *Id*.

In this case, the dispute centers around an audit of the Defendant's payroll records, which was conducted in the Western Division and involved the Defendant's records located exclusively in the Western Division.  In fact, the Defendant's principal places of business, its employees covered by the agreement at issue, equipment, and documents are all located in the Western Division.  Therefore, this factor weighs in favor of transfer inasmuch as there is easier access in the Western Division to the documents and other evidence at issue in this case.

### D.     The Western Division is More Convenient for the Parties and Witnesses.

The convenience to the parties is determined by the parties' respective residences and their abilities to bear the expense of trial in a particular forum.  *Heller Financial, Inc.*, 713 F.Supp. at 1130.  At first blush, this factor appears to be neutral in this case inasmuch as the Defendant is located in the Western Division, while the Plaintiffs' office is located within the Eastern Division.  However, the fact Plaintiffs are requesting to conduct another audit at the Defendant's office in the Western Division tips the convenience factor in favor of the Defendant. *Carpenter's Fringe Ben. Fund of Ill. v. Conery*, 1992 WL 121615 at *2 fn 1 (N.D.Ill. May 18,

7

1992).  In *Carpenter's Fringe Ben. Fund of Ill.*, the Court explained that the convenience argument favors the defendant if the plaintiff anticipates the need to travel to the transferee division to conduct an audit.  *Id*.

Moreover, transfer of this case to the Western Division would be more convenient for the witnesses in this case.  *Kingsley v. Dixon Old People's Home Fund, Inc.*, 1996 WL 417548 at *2 (N.D.Ill. July 22, 1996), citing *Rose v. Franchetti*, 713 F.Supp. 1203, 1214 (N.D.Ill. 1989) (explaining that the convenience of the witnesses to attend trial in a particular forum is an important factor in the transfer determination).  In this case, the dispute centers around an alleged breach of the "Agreements and Declarations of Trust", which allegedly occurred during an audit conducted at the Defendant's office in the Western Division.  In other words, the heart of this case revolves around events that took place in the Western Division.  It follows that the Defendant's employees involved with the audit and/or overseeing the relevant agreements in this case will serve as key witnesses, and all such employees are within the Western Division.  Inasmuch as the key witnesses in this case reside in the Western Division, the convenience factor strongly favors transferring this case to the Western Division.

E.  **The Interests of Justice Favor Transfer to the Western Division.**

The "interests of justice factor" considers the efficient functioning of the court system.  *Concrete Structures of Midwest, Inc. v. Treco Const. Services, Inc.*, 1996 WL 67213 at *5 (N.D.Ill. February 16, 1996).  In deciding this factor, courts consider "the relationship of the case to the forum, the familiarity of the trial court to the governing law, access to sources of proof, the availability of unwilling witnesses to service of process, and whether a transfer will conserve judicial resources."  *Id*.  However, in intra-district transfers, like the instant case, "the interests of justice factor is given less weight, as a transfer between divisions does not involve any conflict of laws issues, nor does it affect the familiarity of the trial court to the governing law or the

8

availability of unwilling witnesses to service of process." *Id*. This is not to say that this factor carries no weight at all. *Westchester Fire Ins. Co. v. Carolina Cas. Ins. Co.*, 2004 WL 170325 at *3 (N.D.Ill. January 15, 2004).

In *Westchester Fire Ins. Co.*, the Court found that an intra-district transfer would best serve the interests of justice because the events giving rise to the litigation occurred in the transferee division and only had minimal connection with the transferor division, the balance of convenience of the parties and witnesses favored transfer, and the case had not progressed to the point where a transfer would significantly delay proceedings. *Id*. Likewise, the interests of justice are best served in the instant case by transferring it to the Western District. In this case, the alleged breach of agreement and the audit giving rise to the litigation occurred in the Western Division, the convenience to the parties and witnesses weighs in favor of transfer to the Western Division, and this case is still in the initial stages, so transfer will not delay the proceedings.

In addition, the interests of justice support transferring this case to the Western Division based on the fact Plaintiffs are seeking to enjoin the Defendant. *Central States, Southeast and Southwest Areas Pension Fund v. Brown*, 587 F.Supp. 1067, 1071 (D.C.Ill. 1984). In *Central States*, the plaintiff, as trustee of the pension fund, brought suit alleging that the defendant breached its obligation to make contributions to the pension fund. *Id*. at 1068-69. The plaintiff's requested remedy included damages and injunctive relief. The Court noted that if the plaintiff was awarded injunctive relief, the Court would have to monitor the defendant's activities. The Court concluded that the transferee court was better equipped to monitor the defendant's activities inasmuch as the defendant was a resident of the transferee court's district. *Id*.

In this case, Plaintiffs have requested the Court enjoin the Defendant and issue an Order for specific performance pursuant to the terms of the "Agreements and Declarations of Trust".

9

Assuming, *arguendo*, that Plaintiffs are granted their requested remedy, the Court will be required to monitor the Defendant's activities within the Western Division's boundaries. Clearly, the Western Division has a greater interest in monitoring activities within its boundaries, not to mention it is better equipped than the Eastern Division to monitor such activities. The Western Division is located a short distance from Defendant's office and can more conveniently oversee an Order for specific performance when compared with the Eastern Division that is located approximately 90 miles from the Defendant's main office. Therefore, the interests of justice weigh in favor of transferring this case to the Western Division.

## CONCLUSION

Transfer is appropriate where even one factor tips the scales in favor of transfer. *Kingsley v. Dixon Old People's Home Fund, Inc.*, 1996 WL 417548 at *3 (July 22, 1996). In this case, numerous factors weigh in favor of transfer. For all the foregoing reasons, this Court should exercise its broad discretion and transfer this matter to the Northern District of Illinois, Western Division.

WHEREFORE, ROCKFORD BLACKTOP CONSTRUCTION CO. respectfully requests this Court transfer this case to the Western Division of the Northern District of Illinois pursuant to 28 U.S.C. §1404, and for all other relief just and proper in the premises.

                                      Respectfully submitted,

                                      HINSHAW & CULBERTSON LLP

                                      By:  s/Lori L. Hoadley
                                              Lori L. Hoadley

Lori L. Hoadley
Hinshaw & Culbertson LLP
100 Park Avenue
P.O. Box 1389
Rockford, IL 61105-1389
815-490-4900

70563285v1 867139

## AFFIDAVIT OF SERVICE

The undersigned certifies that on June 27, 2008, a copy of the foregoing was electronically served via the U.S. District Court CM/ECF E-Filing System upon the following:

**Dugan v. Rockford Blacktop Construction Co.**

For Plaintiffs:
Cecilia M. Scanlon, Esq.
Baum Sigman Auerbach & Neuman, Ltd.
200 West Adams Street, Suite 2200
Chicago, IL  60606-5231
Phone  312.236.4316
Fax     312.236.0241


/s Rhonda Walker


Firm No. 695
HINSHAW & CULBERTSON LLP
100 Park Avenue
P.O. Box 1389
Rockford, IL  61105-1389
Phone  815.490.4900
Fax     815.490.4901

70563285v1 867139